**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Southern Division**

COSTER REALTY LLC
6725 Balmoral Overlook
New Market, MD  21774
Frederick County,

    *Plaintiff*,

  v.

SCHWAT REALTY LLC
4518 Drummond Avenue
Chevy Chase, MD  20815
Montgomery County,

STEVEN F. SCHWAT
4518 Drummond Avenue
Chevy Chase, MD  20815
Montgomery County,

BONNELL REALTY LLC
4518 Drummond Avenue
Chevy Chase, MD  20815
Montgomery County,

    and

PETER J. BONNELL
2400 16th Street NW, Apt. 707
Washington, DC  20009,

    *Defendants*.

Civil Case No. _____

**JURY TRIAL DEMANDED**

## COMPLAINT FOR MONEY DAMAGES, DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF

Plaintiff Coster Realty LLC, ("Plaintiff" or "Coster Realty") by and through undersigned counsel, brings this action to recover money damages and for declaratory judgment and injunctive relief, and in support states:

## NATURE OF THE ACTION

1. This action arises out of Defendants' years-long campaign to cheat Plaintiff—and its sole owner, an elderly widow—out of its rightful share of the financial success of UIP Maryland Residential LLC ("Maryland Residential" or the "Company") even though no other member has a higher percentage Company interest than Plaintiff. As detailed below, Defendants' wrongful conduct has deprived Plaintiff of hundreds of thousands—possibly millions—of dollars over the past five years.

2. Maryland Residential is a real estate investment and development company in which Coster Realty, Schwat Realty LLC, and Bonnell Realty LLC are managing members (the "Managing Members").[1] Together, Schwat Realty and Bonnell Realty (collectively, the "Member Defendants") exercise full and complete dominion over the Company, such that the timing and amount of distributions are entirely under the control of the Member Defendants.

3. In recent years, the Member Defendants—in repeated and pervasive violations of their fiduciary duties—have used their positions of power in, and control over, the Company to

---

[1] Maryland Residential has additional managing members outside of those at issue in this Complaint, but no other managing members have a percentage Company interest and thus have no right to distributions from the Company. Likewise, Maryland Residential has a class of service members, but service members have no power to direct the Company. References in this Complaint to "members" denotes both Maryland Residential's managing members and its service members. The defined term Managing Members refers to the specific subset of managing members which are parties to this action.

redirect a portion of Coster Realty's rightful distributions to Defendant Bonnell Realty and non-member Wilkinson Development LLC ("Wilkinson Development"). Further exploiting their complete dominion over the Company, the Member Defendants unilaterally reinvested approximately $3.6 million from the sale of a Company investment into other ventures in which Coster Realty has no interest, thus diverting millions of dollars that otherwise would have been distributed to Coster Realty. The Member Defendants have also caused Maryland Residential to lend tens of thousands of dollars to unrelated entities through zero-interest loans. That self-dealing by the Member Defendants has reduced Maryland Residential's cash available for distributions to Coster Realty.

4. As a consequence of Defendants' iron-grip control over the Company's affairs and their exclusion of Plaintiff from any participation in Company governance or decision-making, the full extent of Defendants' wrongful conduct is not yet known, and cannot be known absent discovery in this action.

5. For the reasons set forth below, Coster Realty seeks compensatory and punitive damages for Defendants' wrongful conduct, as well as injunctive relief prohibiting Maryland Residential from any further unauthorized payments to Defendant Bonnell Realty LLC, Wilkinson Development, or any other person or entity.

**PARTIES**

6. Plaintiff Coster Realty LLC is a Maryland limited liability company with its principal place of business in Clearwater Beach, Florida. Coster Realty is a Managing Member of, and holds a 48.75% Company interest in, Maryland Residential. Its sole owner and member is Marion Coster, a citizen and resident of the State of Florida.

7. Defendant Schwat Realty LLC ("Defendant Schwat Realty") is a Maryland limited liability company with its principal place of business in Chevy Chase, Maryland. Defendant Schwat Realty is a Managing Member of, and holds a 48.75% Company interest in, Maryland Residential.

8. Defendant Steven F. Schwat ("Defendant Schwat") is the sole owner and member of Defendant Schwat Realty. Defendant Schwat is a citizen and resident of the State of Maryland.

9. Defendant Bonnell Realty LLC ("Defendant Bonnell Realty") is a Maryland limited liability company with its principal place of business in Chevy Chase, Maryland. Defendant Bonnell Realty is a Managing Member of, and holds a 2.5% Company interest in, Maryland Residential.

10. Defendant Peter J. Bonnell ("Defendant Bonnell") is the sole owner and member of Defendant Bonnell Realty. Defendant Bonnell is a citizen and resident of the District of Columbia.

## JURISDICTION & VENUE

11. This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest, attorneys' fees, and costs, and complete diversity of citizenship exists between the parties.

12. This Court has personal jurisdiction over Defendants Schwat Realty and Bonnell Realty pursuant to Maryland Code Ann. Cts. & Jud. Proc. § 6-102 because each are organized under the laws of the state of Maryland. This Court has personal jurisdiction over Defendant Schwat pursuant to Maryland Code Ann. Cts. & Jud. Proc. § 6-102 because he is domiciled in

the state of Maryland. This Court has personal jurisdiction over Defendant Bonnell pursuant to Maryland Code Ann. Cts. & Jud. Proc. § 6-103 because he transacts business in and has caused tortious injury in the state of Maryland.

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because at least one Defendant resides in the District of Maryland and because the Member Defendants carry on regular business within this judicial District.

## FACTS

### A. Marion Coster Inherits Coster Realty from Her Late Husband, Wout Coster

14. In or about 2007, three individuals—Wout Coster, Kees Bruggen, and Defendant Steven Schwat—formed UIP Companies, Inc. ("UIP"), a real estate services and investment company. UIP provides general contracting, property management, and asset management services to Special Purpose Entities ("SPEs") in which UIP's owners and officers also have ownership interests. UIP also provides similar services to third parties throughout the District of Columbia, Maryland, and Virginia.

15. SPEs are used in real estate investment financing to separate different classes of equity ownership or preferred returns in what is known as the "waterfall" method of distributing profits. Maryland Residential is one such SPE. It was formed in approximately 2010 by Wout Coster, Defendant Schwat, and Defendant Peter Bonnell, Schwat's protégé and then-vice president of UIP. Through their respective intermediary LLCs (Coster Realty, Defendant Schwat Realty, and Defendant Bonnell Realty), Coster, Schwat, and Bonnell became owners and Managing Members of Maryland Residential.

16. For years after its formation in 2010, Maryland Residential generated regular and substantial returns for its members.

17. In April 2015, Wout Coster passed away. His interest in Coster Realty and Company interest in Maryland Residential passed to his elderly widow, Marion Coster ("Mrs. Coster").

18. Together, Defendants Schwat and Bonnell, through their intermediary entities Schwat Realty and Bonnell Realty, have full control of the Company. Freed from the oversight of their former business partner, they are now able manage the Company as they please—without involving Mrs. Coster in, or even informing her of, the vast bulk of decisions.

19. Mrs. Coster has faced financial strain since her husband's death. She has received no distributions at all—not one—from UIP, and, but for social security, relies entirely on distributions from SPEs for income. But these distributions are sporadic at best. Mrs. Coster has no steady income, and has no ability to gain any insight whatsoever into when the next distribution will arrive, how much it will be, or the nature of unilateral and vague "deductions" made by Defendants from distribution checks sent to Coster Realty.

20. Although Mrs. Coster receives occasional checks and corresponding distribution workbooks from Defendants Schwat and Bonnell, the management and financial affairs of the Company are a black box—even though Coster Realty holds 48.75% Company interest and no other member owns a greater percentage. By the Member Defendants' design and intent, Mrs. Coster has no insight into the Company's finances, management, or operations, or any decisions that affect her interests. She has no ability to determine what profits have been earned, how money is spent, what distributions are owed, or when and why distributions are made. Often, Defendants will deduct various amounts from the distributions, purportedly for miscellaneous expenses, but Mrs. Coster has no way of verifying if these deductions are proper.

21. In short, Mrs. Coster's entire financial well-being is in the hands of people who have a duty to put her interests first, but have not. In breach of their fiduciary duties to Coster Realty and the Maryland Residential, the Member Defendants have been using their complete control of the Company to further their own interests. They have deprived Mrs. Coster of distributions rightfully owed to Coster Realty, and diverted profits from the Company into investments in which only they—and not Mrs. Coster—have ownership interests. They have done so intentionally and in bad faith, in the various ways described below.

### B. *Maryland Residential's Operating Agreement*

22. Maryland Residential is governed by a limited liability company operating agreement (the "Operating Agreement") that authorizes the Company to acquire a membership interest in, and serve as a managing member of, various limited liability companies and limited partnerships that hold residential and commercial property.

23. Maryland Residential's ownership and control is divided between three of its Managing Members, as set forth in the Operating Agreement. Of the Managing Members, Coster Realty and Schwat Realty hold 48.75% Company interest each, while Bonnell Realty holds 2.5% Company interest.

24. Article III of the Operating Agreement prohibits any member from taking action for or on behalf of Maryland Residential to assume, undertake, or enter into a commitment, debt, duty, or obligation binding the Company without express prior written approval of the managing members, except as specifically provided for in the Operating Agreement. Any actions taken in violation of this provision "shall be void."

25. Article V of the Operating Agreement requires Maryland Residential's profits and losses to be allocated among the Company's members.

26. Article X of the Operating Agreement requires that Maryland Residential's funds be deposited and held in separate Company bank accounts.

27. Article XI of the Operating Agreement provides that the Company's available cash will be distributed when approved by the managing members. Distributions are allocated to the Managing Members "*pro rata* in proportion to their respective ownership interests." No provision of the Operating Agreement, and no amendment thereto, allows for distributions that are not in proportion to a member's interest in Maryland Residential.

C. *Defendants Unlawfully Reduce Distributions to Coster Realty*

28. In July 2015—shortly after Wout Coster's death—the Member Defendants caused Maryland Residential to begin making improper and unauthorized payments to Defendant Bonnell Realty and a third party, Wilkinson Development, reducing Coster Realty's rightful Managing Member distributions. Wilkinson Development is wholly owned by Heath Wilkinson, who was, at the time, an officer of UIP.

29. These distributions were not made in proportion to each members' ownership interest. Rather than Coster Realty and Schwat Realty each receiving 48.75% and Bonnell Realty receiving 2.5% of the Managing Member distribution in proportion to their Managing Member company interests, Coster Realty and Schwat Realty each received only 39%—while Bonnell Realty and Wilkinson Development each received 11%—of the Managing Member distribution.

30. The unauthorized and unlawful distributions to Bonnell Realty and Wilkinson Development cemented Defendant Bonnell's and Heath Wilkinson's loyalty to Defendant Schwat, further entrenching Schwat's control of the Company.[2]

31. Specifically, from October 2015 to September 2017, distributions to Coster Realty from Maryland Residential were reduced by at least $82,278.99 because of improper payments made from the Managing Member distributions to Bonnell Realty and Wilkinson Development:

   a. On or about October 9, 2015, Maryland Residential made a $736,000.00 Managing Member distribution. The Member Defendants improperly allocated to Coster Realty only 39% of the Managing Member distribution, while Defendant Bonnell Realty and Wilkinson Development each received 11%. Coster Realty's distribution was further improperly offset by $14,689.43 in legal bills, resulting in a total distribution to Coster Realty of only $287,110.57 rather than the full $356,960.00 that it was due.

   b. On or about July 31, 2016, Maryland Residential made a $31,200.44 Managing Member distribution. The Member Defendants improperly allocated to Coster Realty only 39% of the Managing Member distribution, while Defendant Bonnell Realty and Wilkinson Development each received 11%. Coster Realty's distribution was further offset by an unexplained "Forfeited Service Members Percentage." Coster Realty thus received $13,107.52 rather than the full $16,448.06 that it was due.

---

[2] Wilkinson Development stopped receiving distributions after he was terminated from UIP in May 2018.

c. On or about September 27, 2017, Maryland Residential made a $64,095.04 Managing Member distribution. The Member Defendants improperly allocated to Coster Realty only 39% of the Managing Member distribution, while Bonnell Realty and Wilkinson Development each received payments of 11% of the Managing Member distribution. Coster Realty thus received $24,997.07 rather than the full $31,086.09 that it was due.

32. The Member Defendants, as members and part owners of Maryland Residential, had a duty to prevent the improper and unauthorized reduction of distributions to Coster Realty as a member of Maryland Residential.

33. Coster Realty has lost tens of thousands of dollars since 2015 as a direct result of these improper reductions in distributions.

### D. *Improper Reinvestment of Company Funds from the Sale of Capitol Park Towers*

34. The Member Defendants also improperly and unilaterally decided to reinvest millions of dollars of distributions owed to Coster Realty into a different real estate investment project in which they—and not Coster Realty—held an interest.

35. In approximately 2014, Maryland Residential acquired an ownership interest in an SPE, Capitol Park Towers LLC, which was a real estate holding company which owned the Capitol Park Towers property in Washington, D.C. Through the waterfall structure, Coster Realty is entitled to distributions from Capitol Park Towers LLC's profits.

36. In spring of 2014, the value of Coster Realty's investment in Capitol Park Towers LLC was estimated to be $3.75 million.

10

37. But when the Capitol Park Towers property was sold in 2018, Mrs. Coster was informed that Coster Realty would receive only $700,000.00—a fraction of the $3.75 million previously projected.

38. Even so, Coster Realty never received a $700,000.00 distribution. Instead, in February 2019, Coster Realty received correspondence indicating that Maryland Residential had issued Coster Realty a $399,003.02 distribution for the sale of Capitol Park Towers.

39. The Member Defendants provided no explanation for the downward departure from the promised $700,000 distribution. In fact, the $399,003.02 distribution to Coster Realty was *further* offset by $172,866.10, allegedly to cover an unidentified line of credit "due from Coster," before it was paid out to Coster Realty.

40. The Member Defendants thus caused Coster Realty to receive only $226,136.92 from the sale of the Capitol Park Towers property—$3,523,863.08 less than the estimated value to Coster Realty reported just five years prior.

41. The drastic reduction in the distribution to Coster Realty was a direct result of the Member Defendants' decision to reinvest over $3.6 million of the Capitol Park Tower sale proceeds into other projects in which Coster Realty had no ownership interest. Before this reinvestment, Defendant Schwat invited Coster Realty to participate in a new development project. But he made clear that, if Mrs. Coster declined to participate in the new development project, Coster Realty would receive its share of the proceeds from the Capitol Park Towers transaction.

42. That did not happen. After Coster Realty declined to participate, it did not receive even a fraction of the full proceeds due to be distributed to it.

43. Coster Realty has suffered over $3 million in damages from this transaction alone.

44. The Member Defendants acted deliberately and with actual malice in reducing Coster Realty's distributions. They did so to retaliate against Mrs. Coster in connection with a separate, unrelated, and ongoing lawsuit between the parties, in a malicious attempt to starve her of cash and interfere with her ability to pay her legal bills.

### E. *Intercompany Loans Improperly Diminish Maryland Residential's Value*

45. In addition to the improper payments offsetting Coster Realty's Managing Member distributions, the Member Defendants have caused Maryland Residential to provide zero-interest loans to unrelated entities without prior written approval of the Managing Members, in violation of the Operating Agreement; often, these loans were never repaid.

46. These loans reduced Maryland Residential's available capital, and thereby its distributions to, Coster Realty.

47. Specifically, the Member Defendants caused Maryland Residential to provide the following loans:

   a. A $281,200.92 loan to UIP Asset Management, Inc., in 2015, which was paid off in 2016;

   b. A loan to UIP Companies, Inc., with a balance of $30,000.00 at the end of 2012, 2013, 2016, and 2017;

   c. A loan to UIP Property Management, with a balance of $120,201 from 2013 until at least June 2018.

   d. A loan to UIP General Contracting with a balance of $35,794.00 from 2016 until at least 2019.

48. These loans were provided to entities that the Member Defendants control and financially benefit from, but which Coster Realty does not.

49. Upon information and belief, each of these loans were provided interest-free.

50. The Member Defendants also did not enforce timely repayment of these loans.

51. By causing Maryland Residential to extend zero-interest loans to third parties and failing to enforce timely repayment of those loans, the Member Defendants have deprived Coster Realty of distributions from the Company.

## COUNT I:
## NEGLIGENCE
## (Against Defendants Schwat Realty and Bonnell Realty)

52. Plaintiff incorporates all preceding allegations as if fully set forth herein.

53. At all relevant times, the Member Defendants owed fiduciary duties—including the duties of loyalty, good faith, and care—to Managing Member Coster Realty.

54. The Member Defendants thus owed fiduciary duties to Coster Realty (a) to administer the affairs of the Company skillfully, fairly, diligently, carefully, and honestly; (b) to act solely in the interests of the Company and its members and not in their personal interests; (c) to safeguard and protect the Company's assets and property; (d) not to waste or acquire for themselves any assets or property of the Company; (e) not to favor their own interests illegally or improperly in the management of the affairs, property, and assets of the Company; (f) not to act deliberately in a manner which injures Coster Realty as a member of the Company; (g) not to acquire illegally for themselves any asset or property of the Company; (h) to keep honest, accurate, and correct accounts of all of the Company's affairs, business and transactions; and (i) to perform diligently and faithfully all of the duties devolving upon them as members of the Company.

55. The Member Defendants have breached these duties consistently and repeatedly since at least 2015 by acting to the detriment of Coster Realty by intentionally, in bad faith, and with reckless disregard of the rights of Coster Realty causing Maryland Residential:

   a. To reduce Managing Member distributions to Coster Realty by at least $82,789.99 by allowing improper payments to Bonnell Realty and Wilkinson Development;

   b. To improperly reduce a related distribution to Coster Realty by over $3 million after unilaterally reinvesting the proceeds from the sale of Capitol Park Towers into projects in which the Coster Realty had no interest; and

   c. To take on unauthorized zero-interest loans and allow Maryland Residential to hold those loans without enforcing repayment in a timely fashion, reducing the funds held by Maryland Residential and thus reducing distributions paid to Coster Realty.

56. These breaches proximately caused Coster Realty injury by diminishing the value of its ownership interest in Maryland Residential and improperly reducing distributions to Coster Realty.

57. Coster Realty has suffered actual loss as a result of the Member Defendants' negligence in an amount to be proved at trial.

58. In addition, Coster Realty should be awarded punitive damages on Count I because the Member Defendants acted with actual malice and with reckless disregard of the rights of Coster Realty.

# COUNT II:
## AIDING & ABETTING NEGLIGENT BREACH OF FIDUCIARY DUTY
### (Against Defendants Schwat and Bonnell)

59. Plaintiff incorporates all preceding allegations as if fully set forth herein.

60. As the owners and sole members of the Member Defendants Schwat Realty and Bonnell Realty, Defendants Schwat and Bonnell controlled and directed all actions taken by the Member Defendants.

61. As set forth herein, since at least 2015, the Member Defendants have repeatedly and consistently breached their fiduciary duties to Coster Realty.

62. Specifically, exercising their control over the Member Defendants, Defendants Schwat and Bonnell knowingly participated in, encouraged, substantially assisted in, and incited the Member Defendants' breaches of fiduciary duty. Defendants Schwat and Bonnell caused these breaches of fiduciary duty in retaliation against Mrs. Coster in connection with a separate, ongoing lawsuit in which they were both parties, and also to reduce Mrs. Coster's available cash flow. Additionally, both Defendants Schwat and Bonnell (through their intermediary entities) benefitted personally by causing Maryland Residential to reinvest proceeds from the Capitol Park Towers transaction into other entities in which they—and not Mrs. Coster—held an interest. And Defendant Bonnell (through Bonnell Realty) benefitted personally from Maryland Residential's disproportionate distributions to Bonnell Realty.

63. By actively participating in these breaches of fiduciary duty, Defendants Schwat and Bonnell aided and abetted their intermediary entities' negligent breaches of their fiduciary duties to Coster Realty.

64. Defendants Schwat's and Bonnell's aiding and abetting the Member Defendants' breaches of fiduciary duties has directly injured Coster Realty in an amount to be proved at trial.

65. In addition, Coster Realty should be awarded punitive damages on Count II because Defendants Schwat and Bonnell acted with actual malice and with reckless disregard of the rights of Coster Realty.

## COUNT III:
## BREACH OF CONTRACT
### (Against Defendants Schwat Realty and Bonnell Realty)

66. Plaintiff incorporates all preceding allegations as if fully set forth herein.

67. The Member Defendants entered into Maryland Residential's Operating Agreement on or about September 1, 2010, and thereby entered into a valid and enforceable contract with the other members of the Company.

68. Pursuant to the Operating Agreement, the Member Defendants are (a) prohibited from entering into any commitment, debt, duty, or obligation binding the Company without express prior written approval of each of the Managing Members, except under authority as granted in the Agreement; (b) required to allocate the Company's profit in proportion to each members' interest each accounting year; (c) required to deposit Company funds and hold them in Company bank accounts; and (d) required to make pro-rata distributions of available cash to the Company's members when approved by a majority of the Managing Members.

69. Additionally, the Member Defendants are prohibited from transferring any interest in the Company and from adding any other members without a specific assignment of interest by a current member under terms set forth in detail in the Operating Agreement.

70. The Member Defendants repeatedly breached these obligations by causing Maryland Residential:

   a. To make no-interest loans without written authorization of the Managing Members that were not timely repaid, which violated Article III of the Operating

Agreement prohibiting members from taking action for or on behalf of Maryland Residential to assume, undertake, or enter into a commitment, debt, duty, or obligation binding the Company without express prior written approval of the Managing Members;

b. Improperly reinvesting a distribution from the sale of Capitol Park Towers to Coster Realty by over $3 million rather than depositing the funds in a Company bank account, which violated Article X of the Operating Agreement requiring that Maryland Residential's funds be deposited and held in separate Company bank accounts and Article XI of the Operating Agreement requiring the Company's available funds be distributed in proportion to their respective ownership interests; and

c. Causing Maryland Residential to dilute distributions to minority Managing Member Coster Realty by making unauthorized payments from those distributions to Defendant Bonnell Realty and Wilkinson Development, which violated Article XI of the Operating Agreement requiring that the Company's available funds be distributed in proportion to their respective ownership interests.

71. These breaches of the Operating Agreement directly injured Coster Realty, reducing the Company's available cash and distributions to Coster Realty.

## COUNT IV:
## CLAIM FOR DECLARATORY JUDGMENT
### (Against Defendants Schwat Realty, Bonnell Realty, Schwat, and Bonnell)

72. Plaintiff incorporates all preceding allegations as if fully set forth herein.

73. The Operating Agreement bars indemnification for claims based upon gross negligence or willful misconduct of the Members.

74. At all relevant times, the Member Defendants had fiduciary duties to Coster Realty as a Managing Member of the Company.

75. The Member Defendants acted with gross negligence in breaching their fiduciary duties to Coster Realty.

76. Defendants Schwat and Bonnell acted with gross negligence by encouraging, assisting, and inciting the Member Defendants to breach their fiduciary duties. Each of these Defendants has acted intentionally, in bad faith, and with reckless disregard of Coster Realty's rights.

77. The Member Defendants, and Defendants Schwat and Bonnell, are barred by the Operating Agreement for seeking or accepting indemnification for their grossly negligent conduct and their willful misconduct.

78. Consequently, a declaratory judgment should be entered barring Defendants Schwat Realty, Bonnell Realty, Schwat, and Bonnell from seeking or accepting indemnification by Maryland Residential, directly or indirectly, for any costs, fees (including attorneys' fees), and expenses incurred in defending this action, and a judgment against any one or more of them in this action.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Coster Realty LLC respectfully requests that the Court:

    A.    Enter judgment against Defendants Schwat Realty LLC, Bonnell Realty LLC, Steven F. Schwat, and Peter J. Bonnell, jointly and severally, for monetary damages in an amount to be established at trial but that is in excess of $75,000.00;

    B.    Award Plaintiff its costs and reasonable attorneys' fees in connection with the preparation, filing, and prosecution of this action;

C. Award Plaintiff pre-judgment interest at the maximum rate established by law;

D. Award Plaintiff punitive damages in an amount to be established at trial;

E. Issue an injunction prohibiting Defendants from reducing or withholding distributions to Coster Realty, prohibiting Defendants from making further distributions to non-shareholders, and requiring that payment of distributions to Coster Realty be made at the same time that distributions are made to other shareholders;

F. Enter a declaratory judgment that Defendants Schwat Realty LLC, Bonnell Realty LLC, Steven F. Schwat, and Peter J. Bonnell are barred from seeking or accepting indemnification by Maryland Residential, directly or indirectly, for any judgment against any one or more of them in this action and for their attorneys' fees and costs in this action; and

G. Order other such relief as this Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: February 26, 2020

Respectfully submitted,

AEGIS LAW GROUP LLP

By:   /s/ Michael K. Ross
    Michael K. Ross (Maryland Bar No. 16557)
    Rachel E. Mueller (Maryland Bar No. 20951)
    801 Pennsylvania Avenue, N.W., Suite 740
    Washington, D.C. 20004
    Tel: (202) 737-3373
    Fax: (202) 735-5071
    Email: mross@aegislawgroup.com
           rmueller@aegislawgroup.com

*Counsel for Plaintiff Coster Realty LLC*